## LIVERPOOL, NEW YORK AND PHILADELPHIA STEAMSHIP COMPANY *v.* COMMISSIONERS OF EMIGRATION.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued March 24, 25, 1884.—Decided January 5, 1885.

In an action of *indebitatus assumpsit*, to recover money alleged to have been illegally exacted, a declaration, which avers the fact of indebtedness, and a promise in consideration thereof, is sufficient on general demurrer, unless it appears that the alleged indebtedness was impossible in law.

To such a declaration, treated as a complaint according to the New York Code, an answer was filed, setting up, as a defence, an act of Congress to legalize the collection of head moneys already paid, approved June 19, 1878. The Circuit Court refused to hear evidence in support of the plaintiff's case, and gave judgment, on the pleadings, in favor of the defendant.

*Held,* That this was error, because it did not appear from the record that the money sued for was within the description of the act of Congress.

This was an action of assumpsit to recover back moneys paid to the Commissioners of Emigration of the State of New York by the steamship company, a carrier of emigrants to the United States. The case was elaborately argued, but the question on which the case is remanded was not discussed in the briefs. The facts in respect of it are stated in the opinion of the court.

*Mr. Ashbel Green* for plaintiff in error.

*Mr. George N. Sanders* (*Mr. Lewis Sanders* was with him), for defendants in error.

Mr. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff in error was plaintiff below, and, being a corporation under the laws of Great Britain and an alien, brought this action in the Circuit Court of the United States for the Southern District of New York, the defendant being a corporation of that State.

The action was in form *indebitatus assumpsit*, and the substance of the declaration was as follows:

"3d. And the said plaintiff, by its said attorneys, complains of the said defendant in a plea of assumpsit upon implied promise for that whereas the said defendant on the 10th day of February, 1875, at the city of New York, in the Southern District of New York aforesaid, was indebted to the said plaintiff in the sum of one million and ninety-three thousand dollars and upwards, lawful money of the United States of America, for certain commutation moneys from the plaintiff unlawfully demanded, exacted, and received at the city of New York by the said defendant under color of certain laws in the State of New York concerning passengers in vessels coming to the State of New York, and concerning the powers and duties of Commissioners of Emigration, and for the regulation of marine hospitals, and paid by the said plaintiff under the inducement of certain representations of the defendant, this plaintiff being an alien and not knowing the laws of the State of New York, and under protest at various times preceding the said 10th day of February, 1875, and in various sums; and to and for the use of the plaintiff.

"4th. And being so indebted, the said defendant, in consideration thereof, afterwards, to wit, on the same day and year last aforesaid, at the place aforesaid, undertook and then and there faithfully promised the said plaintiff well and truly to pay unto the said plaintiff, the said sum of money when," &c., and alleging a breach thereof.

To this declaration, treating it as a complaint according to the procedure under the New York Code, the defendant filed an answer, setting up several distinct defences, and among others the following:

"VII. That by an act of Congress entitled 'A bill to legalize the collection of head moneys already paid,' approved June 19th, 1878, the acts of every state and municipal officer or corporation in the several states of the United States in collection of head moneys for every passenger brought to the United States prior to the first day of January, 1877, under then existing laws of the several States, were declared valid, and the

said acts were ratified, adopted, and confirmed by the United States; and it was further declared that no suits for the recovery of the moneys so paid should be maintained against any state or municipal officer or corporation.

" That plaintiff, in prosecuting this action, is maintaining it for the recovery of head moneys paid prior to 1st January, 1877, pursuant to the then existing laws of the State of New York, for passengers, by the master, consignee, or owner of vessels bringing passengers to the United States from a foreign port, against this defendant as a state corporation of New York, against the form of the statute aforesaid, which said statute this defendant pleads in bar of plaintiff's right to maintain this action and of the jurisdiction of this court to entertain the same."

The bill of exceptions, taken at the trial, shows the following proceedings:

" The counsel for the said plaintiff opened the cause to the jury. The defendant's counsel moved to dismiss on the grounds that the court had no jurisdiction, and that an act of Congress entitled ' A bill to legalize the collection of head moneys already paid,' approved June 19, 1878, was a bar to any recovery on any of the alleged causes of action set forth in the complaint.

" Whereupon the court, being of opinion that said bill was a bar to any recovery on any of the alleged causes of action set forth in the complaint, upon that ground refused to hear evidence, and directed a verdict for the defendants, and that the defendants have judgment against the plaintiff with costs.

" Whereupon the counsel for the plaintiffs, in due time, then and there duly excepted to the ruling, opinion, decision, and direction of the said judge," &c.

Judgment was accordingly rendered for the defendant, to review which this writ of error is prosecuted.

The act of Congress of June 19, 1878, referred to in the bill of exceptions by its title, is as follows:

" Be it enacted, &c., That the acts of every State and municipal officer, or corporation of the several States of the United States, in the collection of head moneys, prior to the first day

of January, eighteen hundred and seventy-seven, from the master, consignee, or owner of any vessel bringing passengers to the United States from a foreign port, pursuant to the then existing laws of the several States, shall be valid, and no action shall be maintained against any such State or municipal officer, or corporation, for the recovery of any moneys so paid or collected prior to said date." 20 Stat. 177.

It is contended by counsel for the plaintiff in error that the sole question open for argument here, because the only one passed on by the Circuit Court, is whether this act of Congress is a valid enactment, though it is admitted that this question divides itself into two; whether Congress had constitutional power to make valid, by subsequent ratification, those laws of the States, which had been previously declared to be void, as regulations of commerce with foreign nations; and whether, if not, it nevertheless could forbid resort to the courts of the United States to those otherwise entitled, claiming redress for what had been done, to their damage, under such statutes of the States.

On the other hand, it has been argued in support of the judgment by counsel for the defendant in error:

1. That the payments alleged to have been made in the complaint were voluntary, for which no recovery can be had on general principles of law.

2. That the defendant in error, being sued in its official capacity, is not suable, being merely the official representative of the State of New York, and that, at least, its relation to the subject is such under the laws of New York, under which it assumed to act, that it is not chargeable upon any principles of implied contract for the moneys alleged to have been paid.

3. And that the act of Congress referred to is a valid enactment and a bar to the action.

These questions, particularly that which challenges the constitutionality of the act of Congress, it is manifest, are of very grave importance; and, after much consideration, we feel constrained to reverse the judgment, without deciding any of them. The reasons, which seem to us to require this course, may be very briefly stated.

The bill of exceptions states that the counsel for the plaintiff below, after the jury had been sworn to try the issues, opened the cause to the jury, that is, made a statement of the facts constituting the cause of action which he expected to prove; but it does not show what that statement was, nor what were the facts which the plaintiff relied on and expected to prove. In this respect the case differs from that of *Oscanyan* v. *Arms Co.*, 103 U. S. 261, where it was held to be entirely proper for the trial court to direct a verdict for the defendant upon the opening statement of counsel for the plaintiff, when, as in that case, such statement is full, exact, and explicit. "Of course," said the court in that case, "in all such proceedings nothing should be taken, without full consideration, against the party making the statement or admission. He should be allowed to explain and qualify it, so far as the truth will permit; but if, with such explanation and qualification, it should clearly appear that there could be no recovery, the court should not hesitate to so declare and give such direction as will dispose of the action." The practice under that rule is not objectionable. On the contrary, it is convenient to court and parties, and not only saves time and expense in shortening trials, but has the merit of presenting the whole case, in a condensed and precise form, for the consideration of a court of review.

In the present case, the fact that a statement was made of the plaintiff's case, without disclosing in the bill of exceptions the facts supposed to constitute it, is referred to for the purpose of showing that the court below did not act upon that statement, and that it is not open to this court to conjecture what it was. The legal inference only is, that it was any case which he was at liberty to prove under his complaint and the issues framed upon it.

What the Circuit Court did was to refuse to hear evidence, not on the ground that the opening statement of the counsel disclosed no right of action, but because it was of opinion that the act of Congress "was a bar to any recovery on any of the alleged causes of action set forth in the complaint;" that is, that, in view of the act of Congress, the complaint was substantially defective in not stating a cause of action, so that it

would be bad on general demurrer; and thereupon judgment was rendered for the defendant on the pleadings alone.

The complaint, upon examination, shows the allegation of an indebtedness from the defendant to the plaintiff, for money unlawfully demanded, exacted and received by the defendant under color of law, and paid by the plaintiff in ignorance of its rights, in consequence of representations made by the defendant, and under protest; and this indebtedness is alleged as the consideration of an implied promise to repay the same. This statement, it is quite true, is general and vague. It does not allege with particularity the laws under color of which the exactions were made, nor the circumstances attending the payment. But it is sufficient; for an actual indebtedness is alleged, and there is nothing in the complaint to contradict the fact, or to demonstrate its impossibility as matter of law. And, although the complaint states that the money was exacted "under color of certain laws in the State of New York concerning passengers in vessels coming to the State of New York, and concerning the powers and duties of Commissioners of Emigration, and for the regulation of marine hospitals," this does not necessarily identify the moneys alleged to have been thus exacted and paid with the "head moneys," the collection of which it was the professed object of the act of Congress to legalize. If it be said that it is matter of judicial cognizance that there were in New York at the time no other laws, under color of which such exactions and payments could have been made—which we do not admit—nevertheless, it remains, that, consistently with the allegations of the complaint, the moneys paid may have been illegally exacted in violation of the laws under color of which, it is alleged, their payment was demanded and made. And the allegation in the answer, that the moneys sued for are, in fact, the "head moneys" which the act of Congress prohibits the recovery of, does not cure the difficulty, for that may have been the very issue to be tried. Taking the complaint to be true, which is what we are bound to do in the present state of the record, the indebtedness alleged to exist must be admitted to exist in fact, if it is possible to exist in law; and this, we may affirm, even though the act of Congress

pleaded and adjudged to be a bar, be a valid law ; for it is not apparent on the record that the money sued for was "head money," nor that it was exacted and paid in accordance with the laws of the State. It will certainly not be denied that, if the moneys sued for were exacted and paid in violation of the laws of New York, under color of which, it is said, they were demanded, and the exaction and payment were made under circumstances authorizing a recovery under the laws of that State, or of the common law in force there, it was not the intention of Congress to interpose a bar to the suit. It is impossible for us on this record to say that this is not such a case.

If, on the other hand, we should assume the plaintiff's case to be within the terms of the statute, we should have to deal with it purely as an hypothesis, and pass upon the constitutionality of an act of Congress as an abstract question. That is not the mode in which this court is accustomed or willing to consider such questions. It has no jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered, one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. These rules are safe guides to sound judgment. It is the dictate of wisdom to follow them closely and carefully.

In the present case, the main and ultimate question is whether the defendant is legally liable to repay the moneys sued for, and, as incidental to that, whether the act of Congress pleaded as a bar to the action is valid. The solution of these questions depends upon facts not apparent upon the present record. That these may be made to appear there must be a new trial.

For these reasons

*The judgment of the Circuit Court is reversed, and the cause remanded, with directions to award a new trial ; and it is so ordered.*